The undersigned have reviewed the Award based upon the record of the proceedings before the deputy commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence as a whole, the undersigned reach similar facts and conclusions as those reached by the deputy commissioner, with some modifications. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties at the initial hearing as
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the plaintiff and defendant-employer.
3. The Cincinnati Insurance Company was the compensation carrier on the risk.
4. Plaintiff's average weekly wage is as set forth on the Form 22 wage chart.
5. Plaintiff is alleging an injury by accident on August 25, 1993, arising out of and in the course of her employment in which she suffered an injury to her back.
6. The defendant-employer has denied liability.
7. The issues to be determined by the Commission are whether the plaintiff, in fact, suffered an injury by accident, whether proper notice was given, and whether there was a causal connection between plaintiff's alleged injury and her present condition.
8. The parties further stipulated to the medical records from Good Hope Hospital.
 **********
Based upon all of the competent, credible, and convincing evidence adduced at the initial hearing, the undersigned make the following additional
 FINDINGS OF FACT
1. In August of 1993, the plaintiff was employed by the Ramada Inn in Dunn, North Carolina.
2. On August 25, 1993, while working for defendant as a maid, the plaintiff held a bundle of clean linen in her arms and walked upstairs to an area to which the lights were turned off according to company policy. Plaintiff was attempting to put the clean linen in a cart in the storage room. As she placed the linen from her arms into the cart, she backed up and fell over a bag of linen on the floor. Apparently, plaintiff did not injure herself because she sought no medical treatment and even forgot about it within a few days. However, she went to Gail Miller, her supervisor, and reported the fall. The plaintiff also told Nancy Smith, a co-worker, about the fall. The plaintiff continued working and asked her co-employees for Tylenol. The following day the plaintiff came back to work.
3. The plaintiff continued to work up to and including August 30, 1993. On August 30, 1993, the plaintiff was getting out of her car at home and taking groceries into the house when she fell again.
4. After the fall at home, the plaintiff experienced pain in her back which radiated down her leg, and on August 31, 1993, the following day, her daughter took her to Good Hope Hospital where she was treated and released. Plaintiff reported to the hospital that she "fell yesterday going upstairs." She never even mentioned the fall on August 25, 1993.
5. The plaintiff stayed out of work for a few days thereafter and then returned to work where she continued to work up until December 9, 1993, when she first saw Dr. Abraham Oudeh.
6. Dr. Oudeh treated the plaintiff conservatively and, when he was unable to afford her relief, referred her to Dr. Kimberly Y. Livingston, a neurosurgeon.
7. Dr. Oudeh kept the plaintiff out of work from December 9, 1993, and since that time he believes the plaintiff has been unable to work and has been totally disabled.
8. After Dr. Livingston examined the results of a CT scan obtained in December of 1993, Dr. Livingston diagnosed a herniated disc at the level of L5-S1 on the left side with evidence of possible nerve root impingement.
9. Although the plaintiff had a history of a L4-5 fusion performed in Texas in 1986, Dr. Livingston feels that the acutely herniated disc shown on the December 1993 MRI is unrelated to the condition which required the fusion of the L4-5 disc interspace in 1986.
10. On February 23, 1994 Dr. Livingston performed surgery on the plaintiff for her ruptured disc and resulting incapacitation.
11. There is insufficient convincing evidence of record to prove that the herniated disc found by Dr. Livingston in the CT scan and MRI performed in December, 1993 and for which Dr. Livingston performed surgery on February 23, 1994, was caused to any measurable extent by the plaintiff's fall at work on the 25th of August rather than the fall which occurred at her home on August 30, 1993. The plaintiff even forgot about the fall at work and never mentioned it to the medical staff at the Good Hope Hospital.
12. Plaintiff is totally impaired and has been so impaired and disabled since December 9, 1993.
 **********
Based on the foregoing stipulations and findings of fact, the undersigned make the following additional
 CONCLUSIONS OF LAW
1. On August 25, 1993, the Plaintiff sustained an accident at work which did not result in a compensable injury. The condition from which plaintiff now suffers was not caused by her work related fall.
2. Thus, plaintiff is not entitled to benefits under the Worker's Compensation Act.
 **********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enter the following
 ORDER
1. Plaintiff's claim for worker's compensation benefits is HEREBY DENIED.
2. Each side shall pay its own costs.
This case is ORDERED REMOVED from the Full Commission's hearing docket.
This the ___________ day of ___________________, 1998.
 S/ ________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ _____________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/ _____________________ BERNADINE S. BALLANCE COMMISSIONER
JHB/kws